Alexander M. Schack, Esq., Bar No. 99126
Natasha A. Naraghi, Esq., Bar No. 284711
LAW OFFICES OF ALEXANDER M. SCHACK
16870 West Bernardo Drive, Suite 400
San Diego, CA  92127
Tel: (858) 485-6535 Fax: (858) 485-0608
alexschack@amslawoffice.com
natashanaraghi@amslawoffice.com

Attorneys for Plaintiff, individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. BENNETT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation<br><br>                    Defendant. | Case No.  **'15CV2106 LAB JMA**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, David A. Bennett ("Plaintiff"), individually, and on behalf of all persons similarly situated ("Class Members"), by and through his attorneys, for his complaint against Defendant Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen"), states and alleges as follows:

- 1 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1.     Plaintiff brings this action to remedy violations of law in connection with Defendant's intentional sale of vehicles with equipment and/or software designed to circumvent emission standards in violation of state and federal laws.

2.     Defendant purposefully and intentionally installed so-called defeat devices on approximately 500,000 Volkswagen and Audi diesel vehicles from at least model years 2009 to 2015 to evade clean air standards ("Affected Vehicles").  As further detailed in the Environmental Protection Agency's ("EPA") Notice of Violation, these vehicles contain a sophisticated software algorithm that detects when the car is undergoing official emissions testing and turns on full emissions controls only during the test. Such a device is known as a "defeat device". During normal driving situations, however, the effectiveness of these emissions controls are severely reduced.  By design the cars were therefore able to meet emission standards in a testing station, but emit nitrogen oxides ("NOx") at up to forty (40) times the allowable limit during normal operation.

3.     Defendant intentionally concealed the existence of the defeat device and instead marketed the vehicles as environmentally friendly while still high performing. Defendant also referenced and advertised the vehicles as "CleanDiesel," using the term in the very name of the Affected Vehicles.    In fact, the emissions controls reduce performance and thus are designed to operate *only* when the car undergoes

- 2 -

emissions testing. Moreover, Defendant charged a premium for Affected Vehicles despite its knowledge that the presence of its defeat devices resulted in emissions that exceeded those permitted by the EPA.

4.     As a result of Defendant's unlawful conduct, Plaintiff and the Class members have suffered harm in that they bought or leased vehicles they would not otherwise have bought or lease or paid more for such vehicles than they otherwise would have. Plaintiff therefore brings this action seeking relief on behalf of himself and all others similarly situated.

## PARTIES

5.     Plaintiff David Bennett is a California citizen who resides in San Diego County, California. Plaintiff individually purchased a Volkswagen Jetta TDI CleanDiesel from a Volkswagen dealer in San Diego, California. Plaintiff purchased and still owns this vehicle. Unknown to Plaintiff, at the time he purchased the vehicle, it was equipped with an emissions control defeat device which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emits 40 times the allowed level of pollutants, including NOx. The use of the defeat device by Volkswagen has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of his vehicle. Defendant knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Plaintiff, so Plaintiff purchased the

- 3 -

vehicle on the reasonable, but mistaken, belief that his vehicle complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

6.     Plaintiff selected and ultimately purchased the vehicle, in part, because of the "CleanDiesel" system, as represented through advertisements and representations made by Volkswagen, including information and representations conveyed through Defendant's website.  Such representations touted the cleanliness of the engine system for the environment and the efficiency and power/performance of the engine system. None of the representations made by Defendant contained any disclosure relating to the defeat device or that Volkswagen had purposefully falsified its certification of EPA compliance. Had Defendant disclosed that the CleanDiesel vehicle actually emitted 40 times the permitted level of pollutants, Plaintiff would not have purchased his vehicle with the CleanDiesel engine or would have paid less for the vehicle.

7.     Plaintiff has suffered an ascertainable loss as a result of Volkswagen's omissions and/or misrepresentations associated with the CleanDiesel engine system, including but not limited to out-of-pocket loss, future attempted repairs, future additional fuel costs, and diminished value of his vehicle.

- 4 -

8.    Neither Volkswagen nor any of its agents, dealers, or other representatives informed Plaintiff of the existence of the defeat device and/or the defective design of the CleanDiesel engine prior to purchase.

9.    Defendant Volkswagen Group of America, Inc. is a corporation doing business in all 50 states and the District of Columbia, and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Dr., Herndon, Virginia 20171.

10.    At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Volkswagen and Audi brand names through the United States. Volkswagen and/or its agents, designed, manufactured, and installed the CleanDiesel engine systems in the Affected Vehicles, which included the defeat device. Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

## TOLLING OF THE STATUTE OF LIMITATIONS

**A.    Discovery Rule Tolling**

11.    Class Members had no way of knowing about Volkswagen's deception with respect to its CleanDiesel engine system and "defeat device." It took federal EPA and California Air Resources Board investigations to uncover Volkswagen's deception, which involved sophisticated software manipulation on Volkswagen's

- 5 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

part.  As reported by the *Los Angeles Times* on September 18, 2015, it took California

Air Resources Board testing on a special dynamometer in a laboratory, open road

testing using portable equipment, and the use of special testing devised by the Board

to uncover Volkswagen's scheme and to detect how software on the engine's

electronic control module was deceiving emissions certifications tests.  Plainly,

Volkswagen was intent on expressly hiding its behavior from regulators and

consumers.  This is the quintessential case for tolling.

12.     Within the time period of any applicable statutes of limitation, Plaintiff

and members of the proposed Class could not have discovered through the exercise of

reasonable diligence that Volkswagen was concealing the conduct complained of

herein and misrepresenting the Company's true position with respect to the emissions

qualities of its vehicles.

13.     Plaintiff and the other Class Members did not discover, and did not

know of facts that would have caused a reasonable person to suspect, that

Volkswagen did not report information within its knowledge to federal and state

authorities, its dealerships, or consumers; nor would a reasonable and diligent

investigation have disclosed that Volkswagen had information in its possession about

the existence of its sophisticated emissions scheme and that it opted to conceal that

information, which was discovered by Plaintiff only shortly before this action was

filed.  Nor in any event would such an investigation on the part of Plaintiff and other

- 6 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Class members have disclosed that Volkswagen valued profits over compliance with federal and state law, or the trust that Plaintiff and other Class members had placed in its representations, or that, necessarily, Volkswagen actively discouraged its personnel from raising or disclosing issues with regard to the true quality and quantity of the emissions, and the emissions software, of its vehicles, or of Volkswagen's emissions scheme.

14.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

**B.    Fraudulent Concealment Tolling**

15.    All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

16.    Instead of disclosing its emissions scheme, or that the quality and quantity of emissions from the subject vehicles were far worse than represented, and of its disregard of federal and state law, Volkswagen falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.

**C.    Estoppel**

17.    Volkswagen was under a continuous duty to disclose to Plaintiff and the

- 7 -

other Class members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

18.     Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

19.     Volkswagen was also under a continuous duty to disclose to Plaintiff and Class members that it had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that it systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

20.     Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 USC § 1332(d). Plaintiff alleges that the amount in controversy exceeds $5 million among the proposed class, exclusive of interest and costs.   Plaintiff further alleges that members of the proposed class are citizens of states different from a defendant, and that the proposed class includes in excess of 100 members.

- 8 -

22.   The court has personal jurisdiction over Defendant because it conducts business in this District. Defendant Volkswagen conducts business throughout California. As such, Defendant has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court appropriate under traditional notions of fair play and substantial justice.

23.   Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant conducts business in this District.  Furthermore, a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in and/or emanated from this District. Attached to this Complaint as Exhibit A is a Declaration from Plaintiff attesting to facts establishing proper venue in this Court pursuant to California Civil Code §1780.

## FACTUAL BACKGROUND

24.   The United States Government, through the Environmental Protection Agency, has passed and enforced laws designed to protect United States citizens from pollution and in particular, certain chemicals and agents known to cause disease in humans. Automobile manufacturers must abide by these US laws and must adhere to EPA rules and regulations.

25.   In particular, the Clean Air Act has strict emission standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution.

- 9 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of emissions control systems during normal driving conditions, cannot be certified. As stated by Cynthia Giles, Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health."

26.    Since at least 2009, Defendant has manufactured and sold cars with defeat devices that allowed for higher levels of emissions than were certified to the EPA.

27.    On or about September 18, 2015, the EPA issue a Notice of Violation explaining that Defendant had installed sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant in the United States that detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test.  At all other times that the vehicle is running, however, the emissions controls are deactivated, meaning that pollution is freely released into the environment at levels that exceed those allowed by federal and state clean air regulators.

28.    Most modern engines, including Volkswagen's "CleanDiesel" engines, use computerized engine control systems to monitor sensors throughout a car's engine and exhaust systems and control operation of the car's systems to ensure

- 10 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

optimal performance and efficiency. These functions can include controlling fuel injection, valve and ignition timing, and, as in Volkswagen's "CleanDiesel" engines, operating the engine's turbocharger. The engine control computer can, for example, ensure that the air-to-fuel mixture is correct based on sensor readings such as throttle position, amount of air flowing into the engine, and engine temperature.

29.     These engine control computers also receive data from sensors in the car's exhaust system that measure the amounts of chemical substances included in the car's exhaust. That data provides a measure of the engine's operation and efficiency, and is thus used by the engine control computer in operating the car's systems to ensure the desired performance and efficiency.

30.     Because modern cars include these sophisticated computers and sensors throughout the car's systems, emissions testing sometimes uses a car's existing sensors to measure the presence of pollutants and track compliance with EPA and state emissions standards. Emissions testing stations plug a diagnostic device into the car's on-board diagnostics ("OBD II") port and use the car's exhaust sensors during the testing procedure to measure the substances emitted. Some states, instead of or in addition to an OBD II diagnostic device, use a measurement probe inserted into the car's exhaust pipe to measure the chemicals emitted.

31.     Volkswagen programmed the engine control computers in the Affected Vehicles with software that detects when the cars are undergoing emissions testing,

- 11 -

and then operates the car's engine and exhaust systems to ensure that emissions comply with EPA emissions requirements.

32.     In short, this software allows Defendant's diesel vehicles to meet emissions standards in labs or state testing stations, while permitting the vehicles to emit nitrogen oxides at up to 40 times the standard allowed under United States laws and regulations during the normal operation of the vehicles.

33.     NOx pollution contributed to nitrogen dioxide, ground-level ozone, and fine particular matter.  Exposure to these pollutants has been linked with a range of serious health dangers, including asthma attacks and other respiratory illnesses that can send people to the hospital. In addition, exposure to ozone and particulate matter have also been associated with premature death due to respiratory-related or cardiovascular-related effects. Children, the elderly, and people with pre-existing respiratory diseases are particularly at risk for health effects from these pollutants.

34.     According to the EPA, Volkswagen installed its defeat device in at least the following diesel models of its vehicles: Model Year ("MY") 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3. The California Air Resources Board is currently investigating whether Defendant installed the device in other cars as well and discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

35.     Although Defendant knew that its diesel vehicles did not comply with emission regulations, for years Defendant advertised its diesel vehicles as low-emission, fuel-efficient cars. Indeed, this marketing message is at the core of its image in the United States. It has been a successful advertising campaign; Volkswagen has become the largest seller of diesel passenger vehicles in the United States.

36.     Defendant's success is based in large part on promoting their diesel cars as "clean" and "green" vehicles.  Indeed, being both highly efficient and "clean" are the centerpieces of Defendant's diesel engine marketing campaign. As part of this marketing strategy, Defendant even used the term "CleanDiesel" in the name of the vehicles about which it lied.

37.     In addition to concealing the existence of the defeat devices and misrepresenting the nature and efficiency of the Affect Vehicles, Defendant also charged a substantial premium for the Affected Vehicles.  For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium for the highest trim Jetta model is substantially higher: The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

38.    These premiums occur across all of the vehicles in which Volkswagen installed its defeat device for emissions testing. The table below sets forth the price premium for each base, mid-level and top-line trim for each affected model.

### CleanDiesel Price Premiums

| Model | Base | Mid-Level | Top-Line |
|-------|------|-----------|----------|
| VW Jetta | $2,860 | $4,300 | $6,315 |
| VW Beetle | $4,635 | n/a | $2,640 |
| VW Golf | $2,950 | $1,000 | $1,000 |
| VW Passat | $5,755 | $4,750 | $6,855 |
| Audi A3 | $2,805 | $3,095 | $2,925 |

39.    Volkswagen has been ordered by the EPA to recall the Affected Vehicles and repair them so that they comply with EPA emissions requirements at all times during normal operation. However, Volkswagen will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As

- 14 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

a result, even if Volkswagen is able to make Class members' Affected Vehicles EPA compliant, Class members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased and as advertised. This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners of Affected Vehicles to pay more for fuel while using their affected vehicles.

40.     As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit 40 times the allowed levels, owners and/or lessees of the Affected Vehicles have suffered losses in money and/or property. Had Plaintiff and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if Volkswagen recalls the Affected Vehicles and degrades the CleanDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiff and Class members will be required to spend additional sums on fuel and will not obtain the performance characteristics of their vehicles when purchased. Moreover, affected vehicles will necessarily be worth less in the marketplace because of their decrease in performance and efficiency.

- 15 -

41.   By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions that were certified to the EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

## CLASS ALLEGATIONS

42.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this class action on behalf of himself and all other similarly situated and seeks certification of the following Class:

> All persons or entities in the United States who are current or former owners and/or lessees of an "Affected Vehicle."  Affected Vehicles include, without limitation: MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3.

43.   Excluded from the Class is Defendant, its parent companies, subsidiaries and affiliates, any entity in which Defendant has a controlling interest, the officers, directors or employees of Defendant, any affiliate, legal representative, heir or assign of Defendant, and any co-conspirators. Also excluded from the Class are all government entities and instrumentalities, and any judges or justices assigned to hear any aspect of this litigation.

44.   Numerosity: The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, Plaintiff believes there are thousands of Class members, who are geographically dispersed throughout the United States.   The number and identity of the Class members are

- 16 -

presently unknown to Plaintiff because such information is in the exclusive control of Defendants, but can be readily ascertained.

45.   <u>Typicality:</u>   Plaintiff's claims are typical of the claims of the Class in that Plaintiff purchased an Affected Vehicle from Defendant, Plaintiff and the members of the Class were damaged by the same wrongful conduct of Defendant, and the relief sought is common to all members of the Class. Plaintiff's claims therefore arise from the same common course of conduct giving rise to the claims of other Class members.

46.   <u>Common Questions Predominate:</u>   Numerous common questions of law and fact exist as to all members of the Class, including, but not limited to:

    a.   Whether Volkswagen engaged in the conduct alleged herein;

    b.   Whether Defendant designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

    c.   Whether the CleanDiesel engine system in the Affected Vehicles contains a defect in that it does not comply with EPA requirements;

    d.   Whether Defendant knew about the defeat device and, if so, how long Defendant has known;

- 17 -

e.  Whether Defendant designed, manufactured, marketed, and distributed Affected Vehicles with a defeat device;

f.  Whether Defendant's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

g.  Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

h.  Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

i.  Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

47.  These and other questions of law or fact are common to the Class and predominate over any questions affecting Class members individually.

48.  <u>Adequacy:</u>  Plaintiff will fairly and adequately represent the interests of the Class because he purchased an Affected Vehicle from Defendant and has no conflict with any members of the Class. Furthermore, Plaintiff has retained counsel with substantial experience and success in the prosecution of class actions and antitrust litigation of this nature.

49.  <u>Superiority:</u>  A class action is superior to any other available method for the fair and efficient adjudication of this controversy since individual joinder of all

- 18 -

Class members is impracticable. Furthermore, the expenses and burden of individual litigation would make it difficult or impossible for individual Class members to redress the wrongs done to them, especially given that the damages or injuries suffered by each individual Class member may be relatively small.  Even if the Class members could afford individualized litigation, the cost to the court system would be substantial and individual actions would also present the potential for inconsistent or contradictory judgments. By contrast, a class action presents fewer management difficulties and provides the benefits of a single adjudication and comprehensive supervision by a single court.

**VIOLATIONS ALLEGED**

**COUNT I**<br>**FRAUD BY CONCEALMENT**

50.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

51.     This claim is brought on behalf of the Class.

52.     Volkswagen intentionally concealed and suppressed material facts concerning the quality of the Affected Vehicles.  As alleged in this complaint, notwithstanding references in the very model names of the subject vehicles as "Clean Diesel," or to their engines as "TDI Clean Diesel" engines, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing

- 19 -

software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to kick-in during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what Volkswagen intended: vehicles passed emissions certifications by way of deliberately induced false readings. Reportedly, Volkswagen's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

53.     Plaintiff and the Class members reasonably relied upon Volkswagen's false representations. They had no way of knowing that Volkswagen's representations were false and gravely misleading. As alleged herein, Volkswagen employed extremely sophisticated methods of deception. Plaintiff and the Class members did not, and could not, unravel Volkswagen's deception on their own.

54.     Volkswagen concealed and suppressed material facts concerning what is evidently the true culture of Volkswagen—one characterized by an emphasis on profits and sales above compliance with federal and state clean air law, and emissions regulations that are meant to protect the public and consumers. It also emphasized profits and sales about the trust that Plaintiff and the Class members placed in its representations. As one customer, Priya Shah, put it in a quotation cited by the *Los Angeles Times* in a September 18, 2015 article, "It's just a blatant disregard and

- 20 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

intentional manipulation of the system.  That's just a whole other level of not only lying to the government, but also lying to your consumer.  People buy diesel cars from Volkswagen because they feel they are clean diesel cars."  In the words of Ms. Shah, which no doubt reflect the sentiments of all other "clean" diesel vehicle buyers, "I don't want to be spewing noxious gases into the environment."

55.     Necessarily, Defendant also took steps to ensure that its employees did not reveal the details of its scheme to regulators or consumers, including Plaintiff and the Class members.  Volkswagen did so in order to boost the reputations of its vehicles and to falsely assure purchasers and lessors of its vehicles, including certified previously owned vehicles, that Volkswagen is a reputable manufacturer that complies with applicable law, including federal and state clean air law and emissions regulations, and that its vehicles likewise comply with applicable law and regulations. Defendant's false representations were material to consumers, both because they concerned the quality of the affected vehicles, including their compliance with applicable federal and state law and regulations regarding clean air and emissions, and also because the representations played a significant role in the value of the vehicles.  As Volkswagen well knew, its customers, including Plaintiff and the Class members, highly valued that the vehicles they were purchasing or leasing were *clean* diesel cars, and they paid accordingly.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

56.   Defendant had a duty to disclose the emissions scheme it engaged in with respect to the vehicles at issue because knowledge of the scheme and its details were known and/or accessible only to Volkswagen, because Volkswagen had exclusive knowledge as to implementation and maintenance of its scheme, and because Volkswagen knew the facts were not known to or reasonably discoverable by Plaintiff or the Class members.  Volkswagen also had a duty to disclose because it made general affirmative representations about the qualities of its vehicles with respect to emissions standards, starting with references to them as *clean* diesel cars, or cars with *clean* diesel engines, which were misleading, deceptive, and incomplete without the disclosure of the additional facts set forth above regarding its emissions scheme, the actual emissions of its vehicles, its actual philosophy with respect to compliance with federal and state clean air law and emissions regulations, and its actual practices with respect to the vehicles at issue. Having volunteered to provide information to Plaintiff, Volkswagen had the duty to disclose not just the partial truth, but the entire truth.  These omitted and concealed facts were material because they directly impact the value of the Affected Vehicles purchased or leased by Plaintiff and the Class members.  Whether a manufacturer's products comply with federal and state clean air law and emissions regulations, and whether that manufacturer tells the truth with respect to such compliance or non-compliance, are material concerns to a consumer, including with respect to the emissions certifications testing their vehicles

- 22 -

must pass.  Volkswagen represented to Plaintiff and the Class members that they were purchasing *clean* diesel vehicles, and certification testing appeared to confirm this—except that, secretly, Volkswagen had subverted the testing process thoroughly.

57.    Volkswagen actively concealed and/or suppressed these material facts, in whole or in part, to pad and protect its profits and to avoid the perception that its vehicles did not or could not comply with federal and state laws governing clean air and emissions, which perception would hurt the brand's image and cost Volkswagen money, and it did so at the expense of Plaintiff and the Class members.

58.    On information and belief, Volkswagen has still not made full and adequate disclosures, and continues to defraud Plaintiff and the Class members by concealing material information regarding the emissions qualities of its referenced vehicles and its emissions scheme.

59.    Plaintiff and the Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased purportedly "clean" diesel cars manufactured by Volkswagen, and/or would not have continued to drive their heavily polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them.  Plaintiff's and the Class Members' actions were justified.  Volkswagen was in exclusive control of the

- 23 -

material facts, and such facts were not known to the public, Plaintiff, or the Class members.

60. Because of the concealment and/or suppression of the facts, Plaintiff and the Class members have sustained damage because they own vehicles that are diminished in value as a result of Volkswagen's concealment of the true quality and quantity of those vehicles' emissions and Volkswagen's failure to timely disclose the actual emissions qualities and quantities of hundreds of thousands of Volkswagen- and Audi-branded vehicles and the serious issues engendered by Volkswagen's corporate policies. Had Plaintiff and the Class members been aware of Volkswagen's emissions schemes with regard to the vehicles at issue, and the company's callous disregard for compliance with applicable federal and state law and regulations, Plaintiff and Class members who purchased or leased new or certified previously owned vehicles would have paid less for their vehicles or would not have purchased or leased them at all.

61. The value of Plaintiff's and the Class Members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has greatly tarnished the Volkswagen and Audi brand names attached to Plaintiff's and the Class members' vehicles and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

- 24 -

62.     Accordingly, Volkswagen is liable to Plaintiff and the Class members for damages in an amount to be proven at trial.

63.     Volkswagen's acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class members' rights and the representations that Defendant made to them, in order to enrich Volkswagen.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

64.     Plaintiff pleads this count pursuant to the law of California.  As necessary, and in the alternative, Plaintiff stands ready to plead sub-classes, based on the residences at pertinent times of members of the Class, to allege fraudulent concealment under the laws of states other than California.

## COUNT II
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE §§ 17200, et seq.)

65.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

66.     Plaintiff brings this Count on behalf of the Class.

67.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful,

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

68.    Volkswagen's conduct, as described herein, was and is in violation of the UCL.  Volkswagen's conduct violates the UCL in at least the following ways:

    a.  By knowingly and intentionally concealing from Plaintiff and the Class members that the Affected Vehicles suffer from a design defect while obtaining money from Plaintiff and the Class;

    b.  By marketing Affected Vehicles as possessing functional and defect-free, EPA compliant CleanDiesel engine systems;

    c.  By purposefully installing an illegal "defeat device" in the Affected Vehicles to fraudulently obtain EPA certification and cause Affected Vehicles to pass emissions tests when in truth and fact they did not pass such tests;

    d.  By violating federal laws, including the Clean Air Act; and

    e.  By violating other California laws, including California laws governing vehicle emissions and emission testing requirements.

69.    Volkswagen's misrepresentations and omissions alleged herein caused Plaintiff and the other Class members to make their purchases or leases of their Affected Vehicles. Absent those misrepresentations and omissions, Plaintiff and the

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

other Class members would not have purchased or leased these vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain CleanDiesel engine systems that failed to comply with EPA and California emissions standards.

70.     Accordingly, Plaintiff and the other Class members have suffered injury in fact including lost money or property as a result of Volkswagen's misrepresentations and omissions.

71.     Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Volkswagen under Cal. Bus. & Prof. Code § 17200.

72.     Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

## COUNT III
## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### (CAL. CIV. CODE §§ 1750, *et seq.*)

73.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

74.     Plaintiff brings this Count on behalf of the Class. California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*, proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

75.     The Affected Vehicles are "goods" as defined in Cal. Civ. Code § 1761(a).

76.     Plaintiff and the other Class members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff, the other Class members, and Volkswagen are "persons" as defined in Cal. Civ. Code § 1761(c).

77.     As alleged above, Volkswagen made numerous representations concerning the benefits, efficiency, performance and safety features of CleanDiesel engine systems that were misleading.

78.     In purchasing or leasing the Affected Vehicles, Plaintiff and the other Class members were deceived by Volkswagen's failure to disclose that the Affected Vehicles were equipped with defective CleanDiesel engine systems that failed EPA and California emissions standards.

79.     Volkswagen's conduct, as described hereinabove, was and is in violation of the CLRA.  Volkswagen's conduct violates at least the following enumerated CLRA provisions:

- 28 -

f.  Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

g.  Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another; Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

h.  Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

80.  Plaintiff and the other Class members have suffered injury in fact and actual damages resulting from Volkswagen's material omissions and misrepresentations because they paid an inflated purchase or lease price for the Affected Vehicles and because they stand to pay additional fuel costs if and when their Affected Vehicles are made to comply with emissions standards.

81.  Volkswagen knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of the CleanDiesel engine systems, and that the Affected Vehicles were not suitable for their intended use.

82.  The facts concealed and omitted by Volkswagen to Plaintiff and the other Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase or lease the

- 29 -

Affected Vehicles or pay a lower price.  Had Plaintiff and the other Class members known about the defective nature of the Affected Vehicles, they would not have purchased or leased the Affected Vehicles or would not have paid the prices they paid.

83.    Pursuant to Civil Code § 1782(a), on September 21, 2015, Plaintiff on behalf of himself and other similarly situated consumers sent a certified letter, through his counsel, to Defendant notifying Defendant of its violations of the California Legal Remedies Act with respect to the Affected Vehicles and requesting that Defendant cease and desist its unlawful conduct, identify and give notice to affected consumers, and offer to make appropriate restitution, correction, or other remedy. If Defendant fails to provide appropriate relief for its violation of the CLRA within 30 days of the date of the notification letter, Plaintiff will amend this Complaint pursuant to Civil Code § 1782(d) to seek actual, statutory, and punitive damages in addition to equitable relief. Plaintiff is currently only seeking equitable relief under this cause of action.

84.    Plaintiff's and the other Class members' injuries were proximately caused by Volkswagen's fraudulent and deceptive business practices. Therefore, Plaintiff and the other Class members are entitled to equitable and monetary relief under the CLRA.

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

## COUNT IV
## VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §§ 17500, et seq.)

85.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

86.     Plaintiff brings this Count on behalf of the Class.

87.     California Bus. & Prof. Code § 17500 states:  "It is unlawful for any … corporation… with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

88.     Volkswagen caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Volkswagen, to be untrue and misleading to consumers, including Plaintiff and the other Class members.

- 31 -

89.     Volkswagen has violated § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of Affected Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

90.     Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Volkswagen's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Affected Vehicles, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Volkswagen with respect to the safety, performance and reliability of the Affected Vehicles.  Volkswagen's representations turned out not to be true because the Affected Vehicles are distributed with faulty and defective CleanDiesel engine systems, rendering certain safety and emissions functions inoperative.  Had Plaintiff and the other Class members known this, they would not have purchased or leased their Affected Vehicles and/or paid as much for them.  Accordingly, Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

91.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Volkswagen's business.  Volkswagen's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

- 32 -

92.     Plaintiff, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Volkswagen from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Volkswagen acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT V
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. COM. CODE § 2314)

93.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

94.     Plaintiff brings this Count on behalf of the Class.

95.     Volkswagen is and was at all relevant times a merchant with respect to motor vehicles under Cal. Com. Code § 2104.

96.     A warranty that the Affected Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to Cal. Com. Code § 2314.

97.     These Affected Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Affected Vehicles are inherently defective in that they do not comply with federal and state emissions standards, rendering certain safety and

- 33 -

emissions functions inoperative; and the CleanDiesel engine system was not adequately designed, manufactured, and tested.

98.     Volkswagen was provided notice of these issues by the investigations of the EPA and individual state regulators.

99.     Plaintiff and the other Class members have had sufficient direct dealings with either Volkswagen or their agents (dealerships) to establish privity of contract between Plaintiff and the other Class members.  Notwithstanding this, privity is not required in this case because Plaintiff and the other Class members are intended third-party beneficiaries of contracts between Volkswagen and its dealers; specifically, they are the intended beneficiaries of Volkswagen's implied warranties. The dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only.  Finally, privity is also not required because Plaintiff's and the other Class members' Affected Vehicles are dangerous instrumentalities due to the aforementioned defects and nonconformities.

100.   As a direct and proximate result of Volkswagen's breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

**COUNT VI**
**BREACH OF CONTRACT**

- 34 -

101.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

102.   Plaintiff brings this Count on behalf of the Class based on California law.

103.   Volkswagen's misrepresentations and omissions alleged herein, including Volkswagen's failure to disclose the existence of the "defeat device" and/or defective design as alleged herein, caused Plaintiff and the other Class members to make their purchases or leases of their Affected Vehicles.  Absent those misrepresentations and omissions, Plaintiff and the other Class members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and the "defeat device."  Accordingly, Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

104.   Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee.  Volkswagen breached these contracts by selling or leasing Plaintiff and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the

- 35 -

"defeat device" and/or defective design, including information known to Volkswagen rendering each Affected Vehicle less safe and emissions compliant, and thus less valuable, than vehicles not equipped with CleanDiesel engine systems and "defeat devices."

105.   As a direct and proximate result of Volkswagen's breach of contract, Plaintiff and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

### COUNT VII
### VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. CIV. CODE §§1791.1 & 1792)

106.   Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

107.   Plaintiff brings this Count on behalf of the Class.

108.   Plaintiff and the other Class members who purchased or leased the Affected Vehicles are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

109.   The Affected Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

110.   Volkswagen is a "manufacturer" of the Affected Vehicles within the meaning of Cal. Civ. Code § 1791(j).

- 36 -

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

111.   Volkswagen impliedly warranted to Plaintiff and the other Class members that its Affected Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792, however, the Affected Vehicles do not have the quality that a buyer would reasonably expect.

112.   Cal. Civ. Code § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

1.    Pass without objection in the trade under the contract description.

2.    Are fit for the ordinary purposes for which such goods are used.

3.    Are adequately contained, packaged, and labeled.

4.    Conform to the promises or affirmations of fact made on the container or label.

113.   The Affected Vehicles would not pass without objection in the automotive trade because of they do not pass EPA and state law emissions regulations.

114.   Because of the "defeat device" falsely causes Affected Vehicles to obtain EPA certification and pass emissions tests when in fact they omit 40 times the permitted level of NOx, they are not safe to drive and thus not fit for ordinary purposes.

- 37 -

115. The Affected Vehicles are not adequately labeled because the labeling fails to disclose the "defeat device" that causes emissions systems of the Affected Vehicles to become inoperative during normal use.

116. Volkswagen breached the implied warranty of merchantability by manufacturing and selling Affected Vehicles containing the "defeat device." Furthermore, Volkswagen's fraudulent use of the "defeat device" has caused Plaintiff and the other Class members to not receive the benefit of their bargain and have caused Affected Vehicles to depreciate in value.

117. As a direct and proximate result of Volkswagen's breach of the implied warranty of merchantability, Plaintiff and the other Class members received goods whose dangerous and dysfunctional condition substantially impairs their value to Plaintiff and the other Class members.

118. Plaintiff and the other Class members have been damaged as a result of the diminished value of Volkswagen's products, the products' malfunctioning, and the nonuse of their Affected Vehicles.

119. Pursuant to Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles.

- 38 -

120.   Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all persons similarly situated, prays for judgment against Defendant as follows:

(a)   That the Court enter an order certifying the class, appointing Plaintiff as representative of the class, and appointing Plaintiff's counsel as class counsel;

(b)   That the Court enter judgment against Defendant for the causes of action alleged against it;

(c)   That the Court enter an order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged herein;

(d)   For injunctive relief in the form of a recall or free replacement program;

(e)   For costs, restitution, damages, and disgorgement in an amount to be determined at trial;

(f)   For an order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

(g)   For treble and/or punitive damages as permitted by applicable laws;

(h)   An award of costs and attorneys' fees;

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

(i)     And for such other and further relief as may be appropriate.

## JURY DEMAND

Plaintiff hereby demands a jury trial for all claims so triable.

Date: September 21, 2015                    Respectfully submitted,

                                            /s/ Natasha A. Naraghi
                                            Natasha A. Naraghi, Esq.
                                            LAW OFFICES OF ALEXANDER M.
                                            SCHACK
                                            16870 W. Bernardo Drive, #400
                                            San Diego, CA 92128
                                            (858) 485-6535  (858) 485-0608 fax
                                            natashanaraghi@amslawoffice.com

CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL